No. 1900

Second Circuit

---

PEERLESS WELDING & MACHINE COMPANY v. PEOPLE'S LIGHT & POWER COMPANY

---

(June 30, 1926, Opinion and Decree)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Appeal—Par. 625.**

Where the issue is one of fact, the appellate court will give much weight to the

finding of the trial judge, and will not disturb that finding unless clearly erroneous.

> Brenard Mfg. Co. vs. Allen, 1 La. App. 44.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

Action by Peerless Welding & Machine Company against Peoples Light & Power Company. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Scheen and Blanchard, of Shreveport, attorneys for plaintiff, appellee.

Crain, Benoit and Jackson, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J.    Plaintiff sued defendant for $1655.50 for work done and material furnished in welding and other machine work.

Defendant denied liability, and alleged that the work was done and material furnished under contract for the price of $300.00 and under agreement that it was not to be paid for unless after ninety days' trial it was found satisfactory and approved by defendant, and that the work proved defective and entirely worthless. And defendant reconvened against plaintiff for $4000.00 as the value of an engine alleged to have been rendered worthless by reason of plaintiff's alleged defective work.

There was judgment in favor of plaintiff for $816.00 and defendant appealed.

## OPINION

The question to be decided in this case is one of fact, whether the work was done without a special contract or whether it was done for an agreed price of $300.00 to be paid only in the event that after ninety days' trial it was found to be satisfactory by defendant. On this question of fact three witnesses for plaintiff, R. L. Efurd, E. C. Efurd, and R. E. Ferguson, testified that there was no contract, and two witnesses for defendant, H. S. Levine and M. L. Pizer, testified that there was.

R. L. Efurd testified, page 3:

"Q. Did you have any contract as to the work to be done—as to the price of the work to be done?
"A. No, sir, there wasn't no estimated price at all.
"Q. What did he tell you to do?
"A. He told us—to weld the shaft and wheel and put it in good shape so he could use it.
"Q. Did you do that?
"A. We did."

E. C. Efurd testified, page 24:

"Q. Well, after you got to Oil City what did you find?
"A. Well, we found that it was too big a job for use to undertake to do there and that he had to have some machine work done on it; so we advised him to bring it into Shreveport where we could handle it better.
"Q. Was it brought to Shreveport?
"A. Yes, sir.
"Q. Who did that?
"A. He sent it by the Caddo transfer.
"Q. Who did?
"A. Mr. Levine sent it in by the Caddo transfer.
"Q. After you saw that—or during that time did you make any contract with Mr Levine as to the price it would cost?
"A. No, sir, there wasn't any contract price made.
"Q. On what basis were you to make a charge then?

"A. Well, we charged by the hour, you know, and the material we used; and that is what we told him—that that was the way we would rather do the job—to make a price that way would be kind of unhandy for both of us."

R. E. Ferguson testified, page 38:

"Q. Did you have any contract with Mr. Lavigne as to what the price would be for this?
"A. No, sir, none whatever * * *."

H. S. Lavigne, testified, pages 55 and 56:

"Q. You can explain to the court what conversation there was between you and Mr. Efurd.

"A. I told Mr. Efurd that I had asked the engineer and the engineer says 'I will quit unless you get a good one and not try to weld'. He says, 'the wheel is liable to come off and kill people and wreck the plant'. He says, 'I won't stay here'. So I told Mr. Efurd, and he says 'I will talk with him'. I took him over to this engineer and they talked about it and I was right there and the engineer told him just what he had told me, and he says: 'Well, you come in tomorrow I have catalogues and I will prove it up'. So I didn't say anything. I said 'I will think it over, I don't know but what I better purchase another engine'. I told him that I had hard luck and that if he was to do the work I wouldn't take any gamble. He says, 'I will do the work, I will put it in and it will operate perfect—the engine will operate perfect and I will wait two months—three months' he says 'for our pay'. I says, 'are you authorized to make an offer of that kind' he says 'absolutely'. So I says 'well, I will call and think it over'. I wired east for another crank and they wasn't able to give to give me a crank under three months and they costs about nine hundred ($900.00) dollars each. I had previously purchased a crank and I was thoroughly disgusted. So I called at his plant—I was distracted and he showed me catalogues and went into the matter again. So I said 'I am not able to get another right of way the people out there are roaring for a plant'. And it was right—it was August or July and I was in a sweat. So I said 'all right, if you will agree to weld it and take all the blame and make me a price on it I will agree'. He says 'well', he says 'how much did you pay Mr. Cunningham'? I says 'I don't intend to pay him anything because the weld didn't hold'. 'Well' he says 'how much was the price'? I told him four hundred ($400.00) dollars. So he says 'well, I will take it for three hundred ($300.00) dollars'. Well, that was agreed upon. I says to him to make the agreement so he promised that he would. I waited about a week and I didn't get any and I asked again; then I thought it would be wisdom to take Mr. Pitzer out with me to have him corroborate that agreement, and I took him out there for that purpose and I told him 'Mr. Pizer is here to listen to that offer'."

M. L. Pizer testified, page 108:

"Mr. Levine brought me out to verify the contract he had with Mr. Efurd or the Peerless Welding Company and said he would ask him for a letter that he would guarantee the work and they hadn't sent the letter and he wanted to—he wanted him to repeat the same agreement before me and the engineer was with us—Mr. Gills and stated he would fix this shaft—make it just as good as new and guarantee the job for three hundred dollars and Mr. Levine was to try it out for ninety days and if it proved satisfactory within that time Mr. Levine was to pay him, but he was not to make him any payment until it ran ninety days satisfactory."

"Q. There was no payment to be made until it ran ninety days?
"A. Yes, sir, and Mr. Levine told him he would run it sixty days and if it ran satisfactory he would pay him.
"Q. All parties agreed to the contract?
"A. Yes."

The district judge who heard the witnesss testify and observed their manner of testifying decided the question of fact in favor of the plaintiff. We have carefully read the 142 pages of testimony in the record. It would serve no useful purpose to quote further from it. The evidence convinces us that the finding of the district judge was correct.

. The fact that plaintiff was only given judgment for $816.00 on a demand for $1656.50 is owing to the fact that defendant claimed that the second welding of the shaft was not to be charged for and that $149.00 of the amount charged on the account sued on should not be allowed for the reason that it was included by plaintiff in à charge for machine work that defendant had paid for through George Anderson and for which amount plaintiff had sued George Anderson and obtained judgment against him therefor. These contentions of the defendant were allowed by the district judge, and as plaintiff has not asked for an amendment of the judgment it is not necessary to go further into the details of these transactions.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed.